435 So.2d 884 (1983)
O.T. SIMS & ASSOCIATES, and Travelers Insurance Co., Appellants,
v.
Chris J. MERCHANT, Appellee.
No. AO-179.
District Court of Appeal of Florida, First District.
July 13, 1983.
Rehearing Denied August 12, 1983.
*885 Charles Vocelle of Brannon, Brown, Norris, Vocelle, Haley, Brown & Robinson, Lake City, for appellants.
M. Blair Payne of Darby, Peele, Page & Bowdoin, Lake City, for appellee.
WENTWORTH, Judge.
The employer and carrier (e/c) appeal an order of the deputy commissioner finding claimant temporarily partially disabled (TPD) from April 2, 1982, to July 12, 1982, and awarding payment of attorney's fees. Claimant cross-appeals the determination of his average weekly wage. We affirm the points raised on appeal and reverse on the cross-appeal.
Claimant was injured on June 4, 1981, when his arm was caught in a conveyor belt at work. The e/c paid temporary total disability benefits until he was released for light duty work on January 12, 1982.[1] At that time claimant returned to work for the employer doing the same job he had done prior to the accident. This was not light duty work, however, and claimant was laid off on March 12, 1982, because he was unable to perform as requested and the employer had no light duty to offer. Claimant searched unsuccessfully for employment from April through June of 1982. He was rehospitalized for additional surgery in July, and TTD benefits were reinstated at that time. A hearing was held on August 19, 1982, on the claim for TPD benefits, higher average weekly wage than that applied by the e/c, rehabilitation mileage reimbursement, and attorney's fees.
There is substantial competent evidence in the record that claimant conducted a good faith work search which was unsuccessful except for $300 earned doing carpentry work for an individual. That amount was credited against the TPD award.[2] The award of TPD benefits is therefore affirmed.
The claim in this case sought reimbursement for underpayment on the basis of miscalculation of claimant's average weekly wage. The e/c had based claimant's TTD benefits on an average weekly wage of $115.75.[3] On appeal, they assert that their figure is proper under § 440.14(1)(f), the part-time worker provision. The deputy found, without explanation, that claimant's average weekly wage was $115.75. We therefore assume that the deputy was applying § 440.14(1)(f), but find nothing in the record to substantiate the necessary predicate for application of that section, infra.
The purpose of the part-time worker provision for determining average weekly wage "is to prevent an employee who had voluntarily determined to limit his earnings *886 from being paid compensation on the basis of a full-time employee in the same employment... . The statute recognizes that it would be inequitable to compensate a worker only on the basis of his part-time earnings or capacity if such status was not voluntarily assumed." J.J. Murphy & Son, Inc. v. Gibbs, 137 So.2d 553, 560 (Fla. 1962). Thus, in order to rebut the claimant's testimony in this case and avail themselves of the limited payment rate, the e/c could have shown that the claimant
[1] had adopted part-time employment as his customary practice, and [2] that under normal working conditions he probably would have remained a part-time worker during the period of disability . .. [and that he] [3] customarily works less than the full-time hours or full-time workweek of a similar employee in the same employment. § 440.14(1)(f), Fla. Stat.
The record contains no affirmative evidence that the foregoing criteria applied to claimant.
Instead we find that claimant adequately met his prima facie burden on this issue by testimony supporting his claim for an average weekly wage based on earnings[4] during the five or six weeks preceding his accident when he said he worked "full time," preceded by five weeks' part-time work and a two-weeks trip. The only other evidence of claimant's wages was the written statement of his stipulated earnings. That statement reflects only that claimant did not work substantially the whole of 13 weeks prior to the accident,[5] and that his weekly earnings for each of the five weeks immediately preceding the accident were considerably more than for each of the first six or seven weeks of his employment with the employer. Thus, there is no proof that claimant had voluntarily adopted part-time work as his customary practice or that he would have remained part time. On the contrary the bare but unrefuted evidence is that he had adopted full-time work to the extent reflected by his schedule during the five weeks preceding the accident.[6] Therefore, although the claimant could clearly have presented clearer or more specific evidence in order to assist the deputy, the application of § 440.14(1)(f) was error, and the record supports claimant's asserted full-time weekly wage of $202.50. Florida Cast Stone v. Dehart, 418 So.2d 1271 (Fla. 1st DCA 1982); § 440.14(1)(d). The deputy's finding on this issue is accordingly reversed and the order shall stand amended to reflect the claimed wage.
Finally, we address the e/c's contention that the award of attorney's fees was improper. E/c correctly note that the deputy did not make an express finding that the carrier acted in bad faith with regard to the handling of the claim, and contend that the award could be permitted under § 440.34, Florida Statutes, only if such a finding was made. The deputy should, of course, always make an express determination of bad faith when awarding attorney's fees under § 440.34(3)(b), but we find that conclusion to be implicit in paragraph 11 of the order which states:
11. That claimant's attorney is entitled to a fee in that the employer/carrier failed to provide the obvious benefits to the claimant resulting in economic detriment.
This determination is in our opinion adequately supported by evidence that the e/c *887 (1) suddenly and without any asserted justification terminated claimant's mileage payments for his rehabilitation travel after previously authorizing and paying same for one third of the authorized term; and (2) immediately terminated all benefits based solely on claimant's release for light duty work, although they knew by virtue of employer's termination of his employment that entitlement to temporary partial benefits could ensue for some reasonable period. See Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982).
The order as amended with regard to the claimant's average weekly wage is affirmed.
ROBERT P. SMITH, Jr., C.J., and ZEHMER, J., concur.
NOTES
[1] In the fall of 1981 the e/c authorized rehabilitation at Santa Fe Community College. This required claimant to travel 66 miles, three days a week. The e/c paid mileage for the first four weeks of the 12 week program, but terminated the payments after that. No explanation was offered for the termination in spite of several inquiries made by claimant. The e/c do not challenge that part of the order awarding mileage reimbursement.
[2] The evidence shows that claimant also earned approximately $50 making deliveries for the employer between the time he was laid off and April 1982. If any error occurred in failure to credit that amount, we do not reach the point because we are referred to nothing showing that an opportunity for correction was accorded the deputy.
[3] The sum of all of claimant's weekly earnings divided by thirteen comes to $115.75.
[4] Because claimant did not work substantially the whole of 13 weeks prior to the accident, § 440.14(1)(a) is inapplicable. There is no evidence of a similar employee, and claimant was not a minor or seasonal worker. Therefore subsections (1)(b), (c), and (e) are also inapplicable.
[5] The sum of claimant's earnings for the last five weeks divided by five equals the claimed wage of $202.50. The averaging of wages for a period less than 13 weeks is not, of course, a correct application of § 440.14(1)(a), but may in the absence of conflicting evidence suffice to show the full-time wages of a claimant under subsection (d) when other methods cannot reasonably be applied. Cf., Perkins v. Heller Brothers, IRC 2-3542; Butler Milwork v. Patterson, IRC 2-3539.
[6] Cf., Holt v. Blue Ribbon Construction Co., 3 FCR 29 (1957). We note the absence of any proof in the present case as to customary full-time working hours in the employment in question.