599 So.2d 706 (1992)
CHURCH'S FRIED CHICKEN and The Travelers Insurance Company, Appellants,
v.
William MALONEY, Appellee.
No. 91-1401.
District Court of Appeal of Florida, First District.
May 13, 1992.
*707 Ivan Matusek of Matusek, McKnight & Jaspers, P.A., St. Petersburg, for appellants.
Donna L. Kerfoot of Lorenzen & House, Tampa, for appellee.
PER CURIAM.
Church's Fried Chicken (employer) and The Travelers Insurance Company (carrier) appeal a workers' compensation order that awarded William Maloney (claimant) wage loss benefits. On May 11, 1986, while working for employer as a store manager, the 49-year-old claimant suffered a heart attack. On December 20, 1988, the judge of compensation claims entered an order awarding claimant temporary total disability (TTD) benefits for the period of May 11, 1986, through June 2, 1986, and thereafter; temporary partial disability benefits (TPD) for the period of October 20, 1986, through January 1, 1988; and
... rehabilitation temporary total disability benefits for the period of time from January 1, 1988, through September 8, 1988. Thereafter, the employer/carrier shall pay rehabilitation temporary total disability benefits to the claimant for the time period from September 9, 1988, to January 1, 1989, so long as the claimant remains enrolled in his current degree program at the University of South Florida. Said payments shall be brought current in a lump sum with statutory interest computed thereon.
The judge also found that:
... [T]he rehabilitation program that the claimant is presently enrolled in [at the University of South Florida] is appropriate under the circumstances of this case. The claimant has been advised to avoid stressful physical work, and the highest-paying job that he has been able to find without retraining has been for $6.00 per hour. The claimant's rehabilitation counselors are of the opinion that the claimant could best regain his wage-earning capacity by completing his course work necessary to obtain his bachelor's degree. I accept the opinions of those rehabilitation counselors.
*708 This court affirmed that order. Church's Fried Chicken v. Maloney, 551 So.2d 464 (Fla. 1st DCA 1989).
Employer and carrier continued to pay claimant rehabilitation and TTD benefits until June 18, 1990, when they advised claimant to conduct a job search and to submit wage loss forms. Claimant failed to perform a job search, apparently relying on his physician's instructions that his heart condition precluded him from taking on a full-time educational course load while also pursuing a full-time or part-time job. Claimant filed a claim seeking wage loss benefits from April 23, 1990, and continuing, penalties, interest, costs and attorney's fees. On March 29, 1991, the judge entered an order awarding claimant "wage loss benefits" from June 18, 1990, through the date of the order, along with statutory interest and costs, and retained jurisdiction to determine claimant's entitlement to attorney's fees. Appealing this order, employer and carrier raise three points.

I.
First, they contend that the judge erred in requiring them to pay approximately 40 weeks of wage loss benefits in connection with a rehabilitation program when they had already paid 52 weeks of rehabilitation benefits. We can find no error on this point because the order unambiguously indicates that the award of wage loss benefits is not an additional award of rehabilitation benefits under section 440.49, Florida Statutes (1985), payable before claimant is adjudged to have reached MMI, but is an award of wage loss benefits under section 440.15(3)(b), payable after claimant has reached MMI.

II.
Appellants' second point argues that the judge erred in awarding claimant wage loss benefits because there is no medical evidence indicating an inability to work, and there is evidence that claimant, who is physically able to work, refused to conduct a job search in order to permit himself to pursue full-time education. They contend that Dr. Rinde's opinion that claimant could not both attend school full-time and hold remunerative employment on either a part-time or full-time basis does not excuse claimant from a job search, because any claimant who is physically able to work must conduct a good-faith work search before any wage loss benefits may be awarded.
With respect to this point, we hold that the judge did not err in ruling that claimant was entitled to receive wage loss benefits for the period indicated. Section 440.15(3)(b), Florida Statutes (1985), provides in part:
1. Each injured worker who suffers any permanent impairment, which permanent impairment is determined pursuant to the schedule adopted in accordance with subparagraph (a)3., may be entitled to wage-loss benefits under this subsection... .
2... . In the event the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, the salary, wages, and other remuneration that the employee is able to earn after the date of maximum medical improvement shall be deemed to be the amount which would have been earned if the employee did not limit his income or accepted appropriate employment. Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury. It shall also be the burden of the employee to show that his inability to obtain employment or to earn as much as he earned at the time of his industrial accident is due to physical limitation related to his accident and not because of economic conditions or the unavailability of employment.
Under section 440.15(3)(b), a claimant is entitled to wage loss benefits upon showing a causal relationship between the wage loss and his compensable physical limitations, which may be proven by evidence that the claimant's physician instructed the claimant not to work, Perez v. Publix Supermarkets, Inc., 520 So.2d 610 (Fla. 1st *709 DCA 1987), that despite a good faith job search, the claimant is unable to find work within his or her restrictions, Anderson v. S & S Diversified, Inc., 477 So.2d 591, 594 (Fla. 1st DCA 1985), rev. denied, 486 So.2d 597 (Fla. 1986), or that a work search is excused or waived. Id. This "work search" requirement has been characterized thusly:
The work search requirement, however important and integral it may be to the proof of wage loss claims, must be applied as an "evidentiary test for employability" and not as a condition precedent to any consideration of the merits of a wage loss claim. "... [T]he so-called `work search' test is merely the evidentiary vehicle by which employability, or lack of it, is proven," and "there are a number of criteria by which wage-earning capacity must be measured, and no `single factor is conclusive.'" Walker v. Electronic Products & Engineering Co., 248 So.2d 161, 163 (Fla. 1971). Of, course claimant's physical or mental condition may be such that the total absence of a job search is reasonable and justified. Chicken-'N-Things v. Murray, 329 So.2d 302 (Fla. 1976); Sizemore v. Canaveral Port Authority, 332 So.2d 23 (Fla. 1976).
Anderson, 477 So.2d at 594 (emphasis added). See also Vann v. St. Anthony's Hospital, 550 So.2d 533 (Fla. 1st DCA 1989) (a work search is not an absolute prerequisite to entitlement to wage loss benefits, but rather is an evidentiary tool by which the claimant will generally demonstrate that compensable physical limitations caused his wage loss).
The application of the deemed earnings provision in section 440.15(3)(b) involves shifting burdens of proof. Once the claimant meets the initial burden of establishing a prima facie showing of a causal connection between the compensable injury and the subsequent loss of income, the burden shifts to the employer and carrier to prove that during the period in which wage loss benefits are claimed, the claimant refused work or voluntarily limited his income. Albertson's, Inc. v. Natale, 555 So.2d 946 (Fla. 1st DCA 1990). The employer and carrier's failure to carry this burden precludes application of the deemed earnings provision.
The record contains competent, substantial evidence to support the judge's finding that claimant is entitled to wage loss benefits for the period in question because claimant met his burden of showing a causal connection between his work-related injury and the subsequent diminution of income. In the previous compensation order affirmed by this court, the judge found that "[b]ecause of the stress and the physical requirements of the job with the employer herein, the claimant resigned from work on October 18, 1986. I find that the claimant resigned for good reasons, specifically because the work was too stressful and that it was affecting his heart condition." Claimant's heart condition was such that he could not continue working in his prior capacity as a store manager or any other stressful physical work activity after he reached MMI and was restricted to performing only sedentary work. After terminating his position with the employer, claimant obtained a job as a night auditor at the St. Petersburg Hilton in 1987, earning less than he previously earned with employer, but was eventually laid off after a few months when this job was "phased out." Claimant subsequently sought vocational assistance from the Department of Vocational Rehabilitation, and with its guidance, he eventually returned to the University of South Florida (USF) to complete his degree in accounting. This rehabilitation program was approved by the previous compensation order as "appropriate under the circumstances," and claimant was awarded the maximum rehabilitation benefits allowable under section 440.49 while enrolled in program. Upon completion of this program, claimant's earnings should substantially increase, thereby diminishing the carrier's liability for future benefits.
After the rehabilitation benefits award had expired, employer and carrier continued to pay claimant compensation benefits while claimant was enrolled in the program, until June 18, 1990, when they controverted *710 the benefits on the ground that claimant had failed to perform a job search. As of the hearing date, claimant was still enrolled at USF and had not conducted a job search. His heart condition had not improved significantly, his physical restrictions continued, he could not return to his former employment or anything comparable thereto, and the type of employment he could engage in was substantially limited. Thus, the record contains ample proof that claimant met his burden of showing a causal connection between his compensable injury and his subsequent inability to engage in remunerative income during the period in question without performing a work search.
We reject the argument that claimant's failure to conduct a work search during the relevant period is alone a sufficient ground to preclude the award of any wage loss benefits. As explained previously, the performance of a work search is not a condition precedent to the award of benefits but only an evidentiary tool that may be used to establish and measure the causal connection between the claimant's compensable injury and his loss of earnings. The judge did not abuse her discretion in ruling that claimant was qualified to receive wage loss benefits.

III.
Third, appellants contend, assuming arguendo that claimant is entitled to wage loss benefits, the judge erred in failing to apply the deemed earnings provision in section 440.15(3)(b), Florida Statutes (1985), because there was evidence that claimant refused to seek employment in order to permit himself to pursue his degree. We accept the proposition that if a claimant is qualified to receive wage loss benefits, the deemed earnings provision of section 440.15(3)(b) may be applicable in the circumstances shown here. Although claimant's enrollment in school without performing a job search would not necessarily preclude him from receiving wage loss benefits, his election to pursue his schooling instead of seeking income-producing employment may be treated as a voluntary limitation of income that triggers the application of the deemed earnings provision. Brosnan v. Sourbeck Roofing, Inc., 578 So.2d 460 (Fla. 1st DCA 1991); Albertson's, Inc. v. Natale, 555 So.2d 946 (Fla. 1st DCA 1990).
However, on the record before us, employer and carrier failed to carry their burden of showing that appropriate employment was available and claimant refused an available job within his restrictions during the relevant period of the award. The only evidence employer and carrier presented regarding available employment was claimant's previous job as a night auditor at a hotel  a job that is no longer available because the hotel phased it out prior to the entry of the previously affirmed December 1988 order. This record affords no basis for concluding that the judge erred in refusing to apply the deemed earnings provision to the awarded wage loss benefits.
Accordingly, no error in the judge's order having been demonstrated by appellants, the order is
AFFIRMED.
ERVIN, BOOTH and ZEHMER, JJ., concur.